IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 15, 2019

**STATE OF TENNESSEE v. JAMES WILLIAM RAY A.K.A. JAMES WILLIAM RAY, JR.**

**Appeal from the Criminal Court for Davidson County
Nos. 2017-A-556, 2017-A-557, 2017-A-689, 2017-A-781, 2017-A-782
Steve R. Dozier, Judge**

**———————————————————**

**No. M2018-01765-CCA-R3-CD**

**———————————————————**

The Appellant, James William Ray a.k.a. James William Ray, Jr., entered best interest guilty pleas to multiple counts of aggravated burglary, theft, and burglary of a motor vehicle. The trial court sentenced the Appellant as a Range II, multiple offender to a total effective sentence of twenty years. On appeal, the Appellant contends that the trial court erred in determining the length of the individual sentences and in imposing consecutive sentencing. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Manuel B. Russ (on appeal), Sean McKinney (at sentencing hearing), and James Moreland (at guilty plea hearing), Nashville, Tennessee, for the Appellant, James William Ray a.k.a. James William Ray, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

The Appellant was charged in multiple indictments with several counts of aggravated burglary, theft, and burglary of a motor vehicle. Specifically, in indictment number 2017-A-556, the Appellant was charged with aggravated burglary, a Class C felony, and theft of property valued more than $1,000 but less than $10,000, a Class D felony. In indictment number 2017-A-557, he was charged with aggravated burglary and theft of property valued more than $500 but less than $1,000, a Class E felony. In indictment number 2017-A-689, he was charged with burglary of a motor vehicle, a Class E felony, and two counts of theft of property valued less than $500, Class A misdemeanors. In indictment number 2017-A-781, he was charged with burglary of a motor vehicle and theft of property valued more than $500 but less than $1,000. Finally, in indictment number 2017-A-782, he was charged with burglary of a motor vehicle and theft of property valued more than $500 but less than $1,000.

The Appellant entered best interest guilty pleas to the offenses as charged. At the guilty plea hearing, the State recited the following factual basis for the pleas:

> In case number 2017-A-556, the State anticipates the proof would show that from 3:45 p.m. on November 27, 2016, to approximately 11:00 a.m. on November 28th, 2016, Brian Cooper's residence was burglarized at 1032 Sharp Avenue. Mr. Cooper had hired [the Appellant] to lay tile in the home that Mr. Cooper was remodeling. Cooper did not approve of the job that [the Appellant] had completed and Cooper fired [the Appellant] prior to November 27th.
>
> On November 18th, 2016, there was video surveillance at the residence of Mr. Cooper that captures [the Appellant] entering the home with another individual. The video showed [the Appellant] and his accomplice taking a new refrigerator out of the kitchen and it showed them loading the refrigerator into [the Appellant's] red Ford [p]ick up truck, which was parked outside. The new refrigerator was valued at $1,500.
>
> In case number 2017-A-557, the State anticipates proof would show that on November 16, 2016, at approximately 2:40 p.m., a burglary occurred at 1028 Granotta Avenue, apartment A. Michael Degarde called police on behalf of the victim since the victim lived out of state. The residence was vac[a]nt and the back door was left

unlocked. A total of 14 cases that contained laminate flooring were missing from the apartment.

Degarde told police that he had had receipts from Home Depot where the flooring had been purchased. Detective Harris was able to determine that 13 of the 14 stolen cases were returned to Home Depot without the purchase receipt. The flooring was returned to Home Depot at 1015 Joyce Lane. Detective Harris obtained video surveillance from Home Depot that captured [the Appellant], who was a contractor that had previously been fired from the 1027 Granotta Avenue job site.

The video showed him returning with the laminate flooring at the Home Depot. He was captured on video returning four cases of the flooring to Home Depot on November 15, 2016. [The Appellant] accompanied two other individuals while they returned the remaining flooring to the Home Depot at Joyce Lane on the same day.

In case number 2017-A-689, the State anticipates the proof will show that on November 1, 2016, at approximately 8:56 a.m., the victim Mr. Albert parked his 2015 GMC Sierra pick-up truck in the Home Depot parking lot located at 1015 Joyce Lane. Albert went inside the store and when he returned to his vehicle a short time later, he noticed that his Echo gas trimmer was stolen from his truck.

Mr. Albert has a dashboard camera and he observed a white male arriving in an F-150 and parking it next to his vehicle. That video was provided to police and it was determined that that individual was [the Appellant]. [The Appellant] could be shown walking past Mr. Albert's vehicle and then a short time later going back to [the Appellant's] car.

During the investigation, Detective Stanley learned that [the Appellant] had pawned an Echo gas trimmer at Cash America Pawn located at 3101 Gallatin Pike under ticket numb[er] 50801 on the same day of the theft. In fact, it was shortly after the theft occurred. Mr. Albert identified the

trimmer as his and stated that [the Appellant] did not [have] his permission to take or pawn his gas trimmer.

Case number 2017-A-781, the State anticipates the proof would show that on November 29th, 2016, the victim, Mr. Brannumn[1] parked his truck in the parking lot of Home Depot on Gallatin Pike. Brannumn went inside the store for several minutes. When he returned to his vehicle, he noticed several items missing from the bed of his truck. He then reported the theft to the police.

Detective Womack observed video surveillance from the Home Depot and noticed a red and white GMC pick-up pull beside Mr. Brannumn's vehicle. At that point, a male got out of the pick-up and committed the burglary. [The Appellant] was known to drive that particular type of vehicle.

Less than two hours later, [the Appellant] entered the Music City Pawn at 2638 Nolensville Pike and sold a Milwaukee red Helex drill bit, a Reidy drill combo kit, and a Milwaukee metal pole saw. All of those items were stolen from Mr. Brannumn. Music City Pawn paid [the Appellant] $64 for those items. Mr. Brannumn advised those items were worth $845. A hold was placed on those items.

And finally, Your Honor in case number 2017-A-782, the State anticipates the proof would show that on December 1st, 2026, at 6:40 a.m., . . . victim Mr. Thompson parked his work truck in the parking lot of Home Depot located at 1015 Joyce Lane and went inside the Home Depot. On video surveillance, a small vehicle pull[ed] beside Mr. Thompson's truck and a male exited. A suspect walked to Thompson's truck and stole several items and left the scene. The total loss for Mr. Thompson was $580.

Approximately two hours later, [the Appellant] entered the Easy Pawn located at 2915 Dickerson Pike and pawned three of the items being a Hitachi Sawzall, Ryobi belt sander and a DeWalt cordless drill for $50. [The Appellant] used his

---

[1] The indictment lists the spelling of this victim's surname as "Branham."

- 4 -

identification [to] complete the transaction. That was caught on video.

According to the plea agreement, the trial court was to determine the length and manner of service of the sentences. At the sentencing hearing,[2] the State submitted the Appellant's presentence report, the risk assessment, and the victim impact statements as exhibits.

The Appellant testified that he was from Springfield, Illinois, that he attended school through the tenth grade, and that he later earned a general education diploma (GED). He was not married and had one brother and two children. His parents and his children's mother were deceased. The Appellant said that his children were "angry with [him] as of right now for being incarcerated again."

The Appellant said that he had been diagnosed with lymphoma, that he was in remission, and that nothing would prevent him from working. The Appellant conceded that he had a "lengthy criminal record." He said that he had successfully completed probationary sentences on previous occasions and acknowledged that he was "on federal probation" when he committed the instant offenses.[3]

The Appellant said that after he was released on probation on a fifteen-year federal sentence, he had hernia surgery and knee surgery and was given Percocet for pain. His doctor warned him that he could become addicted to the Percocet and advised him to tell the doctor when he wanted to stop taking it so he could be weaned from the medication. However, the Appellant became addicted to the medication, did not stop using the pills, and began committing burglaries to buy "street drugs" to support his drug habit. The Appellant noted that prior to serving his federal sentence, he usually chose to use opiates, heroin, or pain pills. The Appellant said that he learned after his surgeries that because of his drug addiction, he needed to abstain from pain medication even if it had been prescribed by a doctor.

The Appellant said that he had been incarcerated for twenty months on the instant offenses, that he had been sober throughout his incarceration, and that he had completed

---

[2] After the guilty plea hearing, the Appellant filed a motion to withdraw his guilty pleas, which the trial court denied after a hearing. The same day he filed the motion to withdraw the guilty pleas, the Appellant's then-counsel filed a motion to withdraw from representation, which was granted by the trial court. New counsel represented the Appellant at the sentencing hearing. Another attorney represented the Appellant on appeal.

[3] The presentence report reflects that the federal sentence was for being a convicted felon in possession of a gun.

all of the programs available to him, such as the anger management program, the Saved program, and various drug programs. The Appellant said that if the trial court granted him alternative sentencing, he would try to find a job and a place to live. He noted that he had been accepted into three different halfway houses.

The Appellant said that he was "sorry for the loss and the inconvenience [his] poor choices have caused." He stated that he "let [his] addictions get out of control" but that he "never set out to hurt anyone." He maintained that during his incarceration, he "took a lot of quality time to put [his] life and [his] thoughts back together" and that he wanted to "live a sober, clean and productive life."

On cross-examination, the Appellant agreed that he was on federal probation when he was arrested for the instant offenses. The Appellant further agreed that he committed the burglaries and thefts to obtain money for drugs to support his addiction and that he had not been caught for every theft he had ever committed.

The trial court applied enhancement factor (1), that the Appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Tenn. Code Ann. § 40-35-114(1). Specifically, the court noted that the Appellant had three felony convictions, which was "more than the two [felony] convictions necessary to qualify [him] as a Range II Multiple Offender," and that he had thirty-four misdemeanor convictions. The trial court also applied enhancement factor (13)(C) upon finding that the Appellant was "on probation for a federal conviction for a firearm offense" at the time he committed the instant offenses. Tenn. Code Ann. § 40-35-114(13)(C). The trial court applied mitigating factor (1), that the Appellant's actions neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1). After considering the foregoing factors, the trial court sentenced the Appellant to eight years for each aggravated burglary conviction, six years for each theft of property valued more than $1,000 but less than $10,000 conviction, four years for each theft of property valued more than $500 but less than $1,000 conviction and each burglary of a motor vehicle conviction, and eleven months and twenty-nine days for each theft of property valued less than $500 conviction.

In considering consecutive sentencing, the trial court found that the Appellant's record of criminal activity was extensive and that he committed the instant offenses while on probation. Tenn. Code Ann. § 40-35-115(b)(2) & (6). The trial court ordered that the sentences within each indictment number be served concurrently with each other. The court ordered that the sentences in indictment numbers 2017-A-556, 2017-A-557, and 2017-A-781 be served consecutively to each other and that the remaining cases be served concurrently with the sentences in indictment number 2017-A-556. The trial court imposed a total effective sentence of twenty years, which it ordered to be served

consecutively to the outstanding federal sentence. The court specifically stated that the "total sentence is reasonably related to the severity of the offenses, is necessary to protect the public from further criminal acts by the [Appellant], and is consistent with the overall purposes of sentencing." The trial court also found that the Appellant should serve his sentences in confinement.

On appeal, the Appellant challenges the length of the sentences imposed by the trial court and the imposition of consecutive sentencing.

## II. Analysis

Initially, we note that the Appellant contends that this court should reduce his sentence based upon our de novo review of the record. However, length, range, and manner of service of a sentence imposed by the trial court are to be reviewed under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013) (applying the standard to consecutive sentencing); State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In conducting its review, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98. The burden is on the Appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentc'g Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of

mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

The Appellant contends that the trial court erred by enhancing his sentences and imposing consecutive sentences based upon his committing the instant offenses while he was on "federal supervised release." The Appellant contends that federal supervised release is "not identical to probation in the State of Tennessee." At the sentencing hearing, the Appellant agreed that he had committed the instant offenses while he was on federal probation, that the federal authorities had a "hold" on him, and that his probation had been terminated. This court previously has found that federal probation was sufficiently similar to state probation to warrant enhancement of a sentence and the imposition of consecutive sentencing. See State v. James Kevin Woods, No. M2017-00800-CCA-R3-CD, 2018 WL 1876342, at *13-14 (Tenn. Crim. App. at Nashville, Apr. 19, 2018), perm. to appeal denied, (Tenn. Aug. 8, 2018). Therefore, we conclude that the trial court did not err by using this factor to enhance his sentences or to impose consecutive sentencing.

The Appellant acknowledges that he has "numerous misdemeanor offenses" but contends that he has only three prior felony convictions. He maintains that using his criminal convictions to establish his range of punishment, the length of the individual sentences, and the consecutive nature of the sentences, "essentially[] punish[es] him for the same conduct twice." However,

> [t]here is no prohibition in the 1989 Sentencing Act against using the same facts and circumstances both to enhance sentences under applicable enhancement factors and to require those sentences to be served consecutively. In fact,

- 8 -

this Court has previously held that consideration of prior criminal convictions and conduct for both enhancement and consecutive sentencing purposes is allowed.

State v. Meeks, 867 S.W.2d 361, 377 (Tenn. Crim. App. 1993); State v. Mark Brian Dobson aka Mark B. Martin, No. M2015-00818-CCA-R3-CD, 2016 WL 7212574, at *15 (Tenn. Crim. App. at Nashville, Dec. 13, 2016). "Furthermore, current 'offenses may be used in determining criminal history for the purposes of consecutive sentencing.'" State v. Branham, 501 S.W.3d 577, 596 (Tenn. Crim. App. 2016) (quoting State v. Richard Hanke, Sr., No. W2011-01830-CCA-R3-CD, 2012 WL 4470964, at *4 (Tenn. Crim. App. at Jackson, Sept. 27, 2012)). We conclude that the trial court did not err in determining the length of the Appellant's sentences or by imposing consecutive sentencing based upon his extensive criminal history.

Finally, we note that the Appellant contends that the trial court failed to properly consider the sentencing principles and that the trial court did not "adequately consider[] the sentence[s] in light of the 'seriousness of the offense[s].'" The record belies these contentions. The trial court took the matter under advisement and entered an order which clearly set out its reasoning. The trial court specifically stated that it was considering the purposes and principles of sentencing when determining the Appellant's sentences. The trial court further noted that the Appellant's criminal history "stretches across almost all of his adult life" and that it was "concerned by [the Appellant's] string of criminal conduct, which involved stealing property from both people he knew and people he did not know." The Appellant is not entitled to relief.

### III. Conclusion

The judgments of the trial court are affirmed.

_____
NORMA MCGEE OGLE, JUDGE

- 9 -